*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GASTON, STEPHENS, and HOUTZ
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Jason S. DOYLE**
Lieutenant Commander (O-4), U.S. Navy
*Appellant*

**No. 201900190R**

_____

Decided: 28 July 2022

Appeal from the United States Navy-Marine Corps Trial Judiciary
*upon further review*

Military Judge:
Kimberly J. Kelly

Sentence adjudged 8 March 2021 by a general court-martial convened at Naval Base Kitsap, Bremerton, Washington, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: no punishment.[1]

For Appellant:
*Lieutenant Commander Michael W. Wester, JAGC, USN*

---

[1] The convening authority disapproved the adjudged 180 days' confinement and forfeiture of all pay and allowances pursuant to a pretrial agreement.

For Appellee:
*Lieutenant John L. Flynn IV, JAGC, USN*
*LCDR Jeffrey S. Marden, JAGC, USN*

———————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

———————————

PER CURIAM:

Appellant's case is before this Court a second time. At his court-martial in 2019, he pleaded and was found guilty of aggravated assault in violation of Article 128, Uniform Code of Military Justice [UCMJ],[2] for placing his hands on his fiancée's neck and applying pressure with a means likely to produce death or grievous bodily harm. During our initial review, we found his plea improvident to aggravated assault, set aside the findings and sentence, and authorized a rehearing.[3] At his second trial, he was convicted, consistent with his pleas, of the lesser-included offense of assault consummated by a battery. His case is now again before us pursuant to continuing jurisdiction under Article 66(b)(3), UCMJ.[4]

In his sole assignment of error, Appellant asserts that under Article 66(c), UCMJ, it would be unreasonable for this Court to approve the findings where (1) Appellant's commanding officer recommended nonjudicial punishment [NJP] after the State of Florida declined to prosecute Appellant; (2) the trial counsel then scheduled a meeting with the immediate superior in command [ISIC] accusing Appellant of attempted murder; and (3) the ISIC stated that while he had no plan to court-martial Appellant, the meeting made him believe the Navy had already made the decision that the case was going to court-martial. We find no prejudicial error and affirm.

---

[2] 10 U.S.C. § 928.

[3] *United States v. Doyle*, No. 201900190, 2020 CCA LEXIS 294 (N-M Ct. Crim. App. Aug. 31, 2020) [*Doyle I*].

[4] *See United States v. Johnson*, 45 M.J. 88, 90 (C.A.A.F. 1996) ("Once the Court of Military Review has jurisdiction over a case, no action by a lower court or convening authority will diminish it.").

## I. BACKGROUND

We summarized the conduct underlying Appellant's case in our initial opinion:

> Appellant met [his fiancée] D.G. in Jacksonville, Florida, in April 2016 through an online dating site and they were engaged approximately seven months later. D.G. had two minor sons from a previous relationship. Appellant received permanent change of station orders and, in March 2017, he moved to Whidbey Island, Washington. Despite this fact, in June 2017, he and D.G. purchased a house together in Jacksonville, into which D.G. and her sons moved. Appellant planned to visit D.G. regularly.
>
> In December 2017, Appellant returned to Jacksonville for his Christmas leave period and stayed in their home, although, by then, the relationship had turned "difficult" and D.G. had stopped wearing her engagement ring. While at the home, Appellant realized that the couple were "not on the same terms" regarding the relationship and he slept on the couch. While the relationship was troubled, Appellant was hoping to work to improve it. But the week before Appellant assaulted D.G., Appellant found an overnight bag from an unknown male in their bathroom.
>
> On the night he assaulted D.G., Appellant went alone to play trivia with [D.G.'s] parents while D.G. stayed home to watch her two children. When Appellant returned, D.G. told Appellant he would need to make plans for himself on 22 and 23 December because she would not be home. These were the two days that D.G.'s children would be with their father and D.G. told Appellant that she would be going out with a man whom she had been seeing since October, the man whose bag Appellant had found in their bathroom. Although D.G. was seeing another man, she assured Appellant that "they could still do Christmas together." Appellant was devastated and a confrontation ensued.[5]

---

[5] *Doyle I*, 2020 CCA LEXIS 294, at *3-4.

As Appellant explained during the providence inquiry at his first trial, he attacked D.G. after she had called him a "passive p[****]" and "not an aggressive man," which were statements in keeping with what he described as a recurring theme in their relationship—that he was "too nice."[6] He admitted at his second trial that during the confrontation, he placed his hands around D.G.'s neck and upper body and applied pressure on her neck, which obstructed her airway. D.G. was able to get away from Appellant and called the police, who apprehended him that night.

Following Appellant's arrest, Appellant and D.G. entered into a "Civil Injunction for Protection Against Domestic Violence," which required Appellant to remain away from D.G. and for the two to sell their home by a certain date. Appellant waived his right to a speedy trial and agreed to undergo a 14-week domestic violence treatment program with the Navy's Fleet and Family Support Center or else face criminal prosecution. After he completed the program, the State of Florida declined to prosecute Appellant.

By the time Florida declined to prosecute Appellant's case, Appellant had been given Temporary Additional Duty orders to Patrol and Reconnaissance Wing TEN in Whidbey Island, Washington. Following Florida's decision, Appellant's chain of command began normal case disposition processes under Rule for Courts-Martial 306. After reviewing Appellant's case and consulting with his staff judge advocate, the Commodore of Wing TEN returned the case to Appellant's commanding officer to take any disciplinary or administrative action he deemed appropriate. Appellant's commanding officer then wrote to Commander, Patrol and Reconnaissance Group, requesting permission to initiate NJP proceedings.

Before this Court, Appellant moved to attach a declaration from the Commodore of Wing TEN,[7] describing his perspective on the case and the events leading to his decision to recommend that Appellant's case proceed to an Article 32, UCMJ, hearing. Among other things, the Commodore states in the declaration (1) that he became aware of Appellant's case while he was the Deputy Commodore; (2) that around the time NJP was recommended, members of Region Legal Service Office [RLSO] Northwest scheduled to meet with him; (3) that during the meeting, the RLSO trial counsel advocated in favor of prosecuting Appellant at court-martial and presented the Commodore with draft charges, which included attempted murder; (4) that prior to the meeting he did

---

[6] *Id*. at *4.

[7] Between the decision to return the case to Appellant's commanding officer for disposition and the request from Appellant's commanding officer to initiate NJP proceedings, the Deputy Commodore of the Wing had become the Commodore.

not believe Appellant's case rose to the level of attempted murder and would not have recommended that the case proceed to an Article 32 hearing; (5) that the meeting left him feeling that the Navy had already made the decision that the case was going to court-martial; (6) that after the meeting he adopted the position that the legal process would play out and would provide an opportunity to clarify the matter; and (7) that he reached his decision to recommend an Article 32 hearing on his own and was not coerced by anyone to do so.

## II. DISCUSSION

Having found no support in the case law for its inclusion in the record, we denied the motion to attach the Commodore's declaration and decline to consider it.[8] Without the declaration, Appellant's claim is without merit. Even if we considered the declaration, we would find no error.

### A. Application of *United States v. Jessie*

"The scope and meaning of Article 66(c), UCMJ, is a matter of statutory interpretation, a question of law we review de novo."[9] Article 66, UCMJ, governs this Court's review of findings and sentences. The version of this provision relevant to Appellant's court-martial states:

> In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, *on the basis of the entire record*, should be approved.[10]

In *United States v. Jessie*, our superior court examined what constitutes the "entire record" and what types of supplemental materials may be properly attached to it.[11] The court found that while the Code does not provide an opportunity for the accused and his counsel to supplement the "record" after the

---

[8] *See United States v. Willman*, 81 M.J. 355, 356-57 (C.A.A.F. 2021); *United States v. Jessie*, 79 M.J. 437, 443 (C.A.A.F. 2020); *United States v. Ginn*, 47 M.J. 236, 242 (C.A.A.F. 1997); *United States v. Buttigieg*, No. 202000272, 2022 CCA LEXIS 36 (N-M. Ct. Crim. App. Jan. 18, 2022).

[9] *United States v. Nerad*, 69 M.J. 138, 141–42 (C.A.A.F. 2010) (citation omitted).

[10] Article 66(c), UCMJ (emphasis added).

[11] *Jessie*, 79 M.J. at 437.

convening authority has acted, there are a few circumstances in which a court of criminal appeals [CCA] may supplement the record: (1) when reviewing prison conditions under Article 66(c), UCMJ, if the record contains information about those conditions; (2) when extra-record fact determinations are necessary predicates to resolving appellate questions for issues raised by the record, but not fully resolvable by the materials in the record; and (3) when considering allegations concerning violations of the Eighth Amendment's prohibition of cruel and unusual punishment, as well as violations of an appellant's rights under Article 55, UCMJ.[12]

Here, Appellant moved to attach the declaration at issue in December 2021, after his first court-martial and appeal, after his rehearing, and seven months after his second appeal was docketed with this Court, to support a claim of prosecutorial overreach in the disposition decision that was not asserted in his first appeal regarding the same referred charge. Under Article 66(c), UCMJ, as interpreted by our superior court in *Jessie*, we find no legal basis to grant Appellant's motion to attach the declaration to the record and decline to consider it. Without the declaration, his claim is baseless.

**B. Prosecutorial Overreach**

Even if we considered the declaration, we would find no merit in Appellant's assertion of error. It is a well-established principle of military justice that consultation between disposition authorities and judge advocates is an expected norm of the case disposition process.[13] Disposition authorities are expected to exercise their independent discretion at each stage of the process, in consultation with the judge advocates advising them, and to assess all relevant facts and circumstances prior to making a disposition decision. Likewise, staff judge advocates and trial counsel are expected to be forthright in their advice to disposition authorities, exercising care to present the decision-makers with all the relevant facts and circumstances underlying their recommendations. Such legal counsel must be cautious to avoid usurping the role of decision-makers by suggesting or implying that they do not, in fact, have the discretion to dispose of cases other than through court-martial.

Here, we find no evidence of any actions in contravention of these established norms, and thus no support for Appellant's claims of misconduct or improper influence by the trial counsel over the Wing Commodore, who states

---

[12] *Jessie*, 79 M.J. at 441-42, 444-45 (citations omitted).

[13] *See* Article 34(a)-(c), UCMJ; Dep't of the Navy, Judge Advocate General Instr. 5800.7G, Manual of the Judge Advocate General paras. 0128.h, 0137.b (Jan. 15, 2021).

that the decision to recommend an Article 32 hearing was his own. While Appellant argues that his court-martial conviction is the result of prosecutorial overreach, he raises no claim of unlawful command influence, unreasonable multiplication of charges, or prosecutorial misconduct before this Court, for which case precedents would require a showing of prejudice to prevail on such legal claims.[14] Rather, he asks us to use our authority to disapprove his conviction "even if correct as a matter of law."[15] In effect, he asks us to find a solution in equity, not law, under the discretionary powers granted us by Article 66, UCMJ. We decline this invitation.

Broken into its constituent parts, the language quoted above from Article 66(c), UCMJ, provides that a CCA "may affirm only such findings and sentence that it: (1) finds correct in law; (2) finds correct in fact; and (3) determines, on the basis of the entire record, should be approved."[16] With respect to the third part, while our statutory authority "to disapprove part or all of the sentence and findings" is clear, "nothing suggests that Congress intended to provide the CCAs with unfettered discretion to do so for any reason, for no reason, or on equitable grounds . . . ."[17] To the contrary, our superior court has held that our broad review powers under Article 66 must be exercised in the "context of legal—not equitable—standards, subject to appellate review."[18] Thus, notwithstanding established principles of assessing sentence appropriateness,[19] we must be wary not to "exceed[] [our] authority by disapproving a finding with reference to something other than a legal standard."[20]

In other words, ours is a court of law, not equity. Where appellants are sentenced appropriately, and their cases present no issues with respect to the

---

[14] *See United States v. Barry*, 78 M.J. 70 (C.A.A.F. 2018); *United States v. Campbell*, 71 M.J. 19, 22-24 (C.A.A.F. 2012); *United States v Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005).

[15] Appellant's Br. at 29.

[16] *Nerad*, 69 M.J. at 141 (citing *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002)).

[17] *Id.* at 145 (citation omitted).

[18] *Id.* at 140 (citing *United States v. Quiroz*, 55 M.J. 334, 339 (C.A.A.F. 2001)).

[19] *See, e.g., Jessie*, 79 M.J. at 440 ("[A] CCA may not affirm any portion of a sentence that it finds excessive. . . . Accordingly, the CCAs have broad discretionary power to review sentence appropriateness.") (cleaned up).

[20] *Nerad*, 69 M.J. at 140.

factual and legal basis for their convictions, we are left with the ability to remedy legal errors. What Appellant asks this Court to do—i.e., wield its broad Article 66 authority to conclude that the findings should not be approved, even if correct as a matter of law, due to prosecutorial overreach[21]—is simply beyond our power. As we find that there was no unlawful action on the part of the trial counsel in persuading the Wing Commodore that court-martial charges should be preferred in lieu of handling the case administratively, we decline to apply our Article 66 authority to disapprove Appellant's conviction.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[22]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

S. TAYLOR JOHNSTON
Interim Clerk of Court

---

[21] Appellant's Br. at 19 (arguing the trial counsel's "decision to draft an attempted murder charge and schedule a meeting with the Commodore to urge an Article 32 hearing on this theory—after Appellant's commanding officer recommended [NJP]—[is] the sort of overreach that warrants disapproving the finding").

[22] Articles 59 & 66, UCMJ.